UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS PATRICK,<br><br>       Plaintiff,<br><br>    v.<br><br>PETROFF, et al.,<br><br>       Defendants. | Case No. 1:16-cv-00945-AWI-MJS (PC)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 1)**<br><br>**ORDER DENYING MOTION TO SUBMIT EVIDENCE**<br><br>**(ECF No. 9)**<br><br>**THIRTY (30) DAY DEADLINE TO AMEND** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. His June 30, 2016 complaint is before the Court for screening. (ECF No. 1.) He has declined Magistrate Judge jurisdiction. (ECF No. 6.)

On September 21, 2016, Plaintiff filed a "Motion to Submit Evidence in Support of Claim." (ECF No. 9.) Therein, he attached numerous documents he seeks to add to his complaint, including, inter alia, appeals forms, rules violation reports, and disciplinary hearing forms.

## I. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28

1  U.S.C. § 1915A(a).   The Court must dismiss a complaint or portion thereof if the
2  prisoner has raised claims that are legally "frivolous or malicious," that fail to state a
3  claim upon which relief may be granted, or that seek monetary relief from a defendant
4  who is immune from such relief.   28 U.S.C. § 1915A(b)(1), (2).   "Notwithstanding any
5  filing fee, or any portion thereof, that may have been paid, the court shall dismiss the
6  case at any time if the court determines that . . . the action or appeal . . . fails to state a
7  claim upon which relief may be granted."   28 U.S.C. § 1915(e)(2)(B)(ii).

8  **II.   Pleading Standard**

9         Section 1983 provides a cause of action against any person who deprives an
10  individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A
11  complaint must contain "a short and plain statement of the claim showing that the
12  pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are
13  not required, but "[t]hreadbare recitals of the elements of a cause of action, supported
14  by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678
15  (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are
16  not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572
17  F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).   While
18  factual allegations are accepted as true, legal conclusions are not.   Iqbal, 556 U.S. at
19  678.

20         Under section 1983, Plaintiff must demonstrate that each defendant personally
21  participated in the deprivation of his rights.   Jones v. Williams, 297 F.3d 930, 934 (9th
22  Cir. 2002).   This requires the presentation of factual allegations sufficient to state a
23  plausible claim for relief.   Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572
24  F.3d 962, 969 (9th Cir. 2009).   Prisoners proceeding pro se in civil rights actions are
25  entitled to have their pleadings liberally construed and to have any doubt resolved in
26  their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but
27  nevertheless, the mere possibility of misconduct falls short of meeting the plausibility
28  standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**III.      Plaintiff's Allegations**

Plaintiff is currently incarcerated at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, however his claims arose at Wasco State Prison ("WSP") in Wasco, California. He sues twenty-three separate Defendants: Officers Petroff, Ball, Picazo, Hurd, Reynaga, Dominguez, Coca, Buttram, Ziegler, Nieto, Martinez, Gonzalez (male), and Gonzalez (female); Sergeants Moyes and Bracken; Lieutenant R. Figueroa; Drs. Ramos, Patel, and Cowen; Nurse Castle; and Law Librarians Meeks and Murrieta.

Plaintiff brings a plethora of claims arising from numerous unrelated events. He alleges a denial of access to the courts, interference with his legal mail, wrongful deprivations of property, denial of meals, failure to protect, inadequate medical treatment, violations of the Equal Protection clause, and retaliation. Plaintiff requests punitive and compensatory damages, as well as an order directing Defendants to attend Alcoholics Anonymous, study the California Code of Regulations, and limit their overtime hours.

His allegations are at times rambling and difficult to comprehend. However, they may fairly be summarized as follows:

**A.      Legal Mail and Access to the Courts**

On February 10, 2016, Defendants Ball and Picazo prevented Plaintiff from receiving his legal mail.

On February 27, 2016, Defendant Hurd refused Plaintiff's request for writing supplies.

On February 26, 2016, Defendant Hurd signed and sealed three envelopes containing writs of habeas corpus. However he did not write his badge number on any of the envelopes or place the envelopes in the mail depository.

On March 15, 2016, Defendant Gonzalez (female) refused to send Plaintiff's confidential legal mail after Defendant Ball bullied her into refusing. Although Plaintiff then gave his mail to Defendant Petroff for sending, he believes Defendant Petroff

1  purposely misplaced the mail, since the documents contained therein did not make it to
2  the Court by the filing deadline.

3       In February, March, April, and May 2016, Plaintiff used the law library to send
4  numerous pieces of correspondence to the ACLU, Senator Barbara Boxer, private
5  counsel, the Federal Bureau of Investigation, and others. Plaintiff believes Defendant
6  Murrieta either failed to mail his correspondence, or intentionally withheld the responses
7  from him. Plaintiff believes Defendant Ziegler was behind the interference with Plaintiff's
8  mail. Plaintiff tried to tell Defendant Figueroa, a Lieutenant, about Defendant Ziegler's
9  misconduct in handling Plaintiff's mail, however Figueroa refused to listen.

10      **B.    Access to Law Library**

11      On March 3, 2016, Defendant Meeks interviewed Plaintiff for his Priority Legal
12  User ("PLU") status and informed Plaintiff that he would be escorted to the law library "in
13  about 45 minutes." During the interview Defendant Ziegler stood nearby and stared at
14  Plaintiff. Plaintiff was not taken to the law library until March 7, 2016.

15      In May and June 2016, Plaintiff was repeatedly denied access to the law library
16  despite having been granted PLU status. At the time, the law library was being
17  renovated. Plaintiff sent several requests to Defendants Meeks, Reynaga and
18  Dominguez asking when the law library renovations would be complete, but received no
19  response. Plaintiff believes Defendant Ziegler intentionally interfered with Plaintiff's law
20  library access in retaliation for Plaintiff's lawsuits against him.

21      **C.    Failure to Protect**

22      On March 6, 2016, Plaintiff was involved in a fight with another inmate that left
23  Plaintiff with a large gash in his head. Plaintiff believes Defendants Martinez and
24  Gonzalez (male) allowed the fight to take place because they enjoyed watching it. After
25  Plaintiff returned from receiving medical treatment, Defendants Martinez and Gonzalez
26  refused to give Plaintiff his lunch.

27      **D.    Access to Medical Care**

28      On March 5, 2016, Defendant Hurd refused to give Plaintiff a CDCR Form 7362

so that Plaintiff could request mental health services. When Plaintiff requested a CDCR 22 inmate request form with a copy attachment, Defendant Hurd only gave Plaintiff the front page.

On March 6, 2016, Defendant Dr. Ramos saw Plaintiff with regard to the injuries he sustained during the above-described inmate fight. Dr. Ramos stapled the gash in Plaintiff's head without giving Plaintiff any warning. Defendant Moyes witnessed this incident. Plaintiff was told the staple should fall out by itself within five to seven days, however it remained in his head for nearly three months.

On May 28, 2016, Defendants Hurd, Castle, and Bracken pulled Plaintiff aside so that Castle could remove the staple using needle-nosed pliers. After multiple attempts, Castle pulled the staple from Plaintiff's head. Plaintiff's mental health clinician had to request medical services on Plaintiff's behalf because Plaintiff's own medical request forms were rejected.

In February 2016, Plaintiff sought mental health services from Defendant Dr. Cowen. Defendants Ziegler, Reynaga, and Buttram interfered with Plaintiff's ability to receive services by interrupting his sessions and intimidating Defendant Cowen.

On June 14, 2016, Plaintiff was escorted to the medical trailer for a mental health appointment even though his ducat read "medical clinic." Defendant Dr. Patel violated Plaintiff's right to proper medical treatment by conducting his mental health session outside of the medical clinic. Defendant Ziegler bullied Dr. Patel into violating Plaintiff's rights.

**E.    Denial of Food**

On March 11, 2016, Defendant Hurd told the kitchen staff to give Plaintiff smaller portions at dinner. Plaintiff states Defendant Hurd has been unfair to Plaintiff because of Plaintiff's race, large body "part," and single cell status. Plaintiff believes Defendant Hurd is gay, and thus treats Plaintiff unfairly.

**F.    Interference with Property**

On February 15, 2016, Defendant Petroff removed a Folgers coffee container

from Plaintiff's cell without Plaintiff's permission.

In August 2015, Defendant Nieto led Plaintiff to believe that he had $437.50 in his prisoner trust account, deposited by his girlfriend. However, when Plaintiff tried to purchase canteen items, he was told there were insufficient funds in his account. Defendants Hurd, Reynaga, Ziegler, Hernandez, and Nieto "played with" Plaintiff regarding his available canteen funds.

### G.    Acts of Retaliation

Plaintiff arrived at WSP on August 5, 2015. From that date up to and including June 21, 2016, Plaintiff was not interviewed by a counselor for programming. Plaintiff believes Defendants Ziegler and Dr. Cowen and Correctional Counselor Lane (not a defendant) purposely hindered Plaintiff's transfer to an assigned institution to program in retaliation for Plaintiff's lawsuits against Defendant Zieglar.

On May 14, 2016, Correctional Officer Priest (not a defendant) told Plaintiff to take a urine test even though Plaintiff had no history of drug or alcohol use while at WSP. Plaintiff stated he could not urinate because he had just gone to the bathroom. Correctional Officer Showers (not a defendant) threatened to issue an RVR if Plaintiff did not urinate within three hours. Plaintiff states he was found "guilty" and mandated to undergo urine tests once a month for one year.[1] Plaintiff believes Defendant Reynaga arranged for Plaintiff to be subjected to a random urinalysis in retaliation for a civil rights case Plaintiff filed against him.

### H.    Acts of Harassment

On February 26, 2016, Defendant Buttram approached Plaintiff and circled him in an aggressive and threatening manner.

On June 21, 2016, Plaintiff was interviewed concerning a 602 he filed complaining of sexual harassment. Defendant Ziegler interrupted the interview and told Plaintiff to "quit crying." Defendant Coca witnessed this incident and did not intervene.

---

[1] It is not clear if Plaintiff was found "guilty" for this particular incident or an earlier urine test.

On June 21, 2016, Defendant Hurd told Plaintiff to meet with a suicide watch employee. While Plaintiff was waiting for the employee, Defendants Hurd and Petroff approached and spoke to Plaintiff in a rude and sarcastic manner.

## IV.   Discussion

### A.   Misjoinder of Claims under Rule 18(a)

Plaintiff raises multiple unrelated claims against multiple Defendants. A plaintiff may not proceed on myriad unrelated claims against different staff members in one complaint:

> "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'   Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.   Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)."

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff may not proceed with a "mishmash of a complaint." Id. His complaint will be dismissed with leave to amend. The Court will advise Plaintiff of the pleading standards for each of the legal theories he puts forth to aid him in drafting his amended complaint. Plaintiff's amended complaint must comply with Rule 18(a); if it does not, the Court will choose which claims will proceed and will dismiss out all unrelated claims.

### B.   Scope of Relief

Plaintiff's requests that Defendants be directed to attend Alcoholics Anonymous, study the California Code of Regulations, or limit their overtime is appropriately construed as a request for injunctive relief. In any civil action involving prison or jail conditions seeking prospective relief, the Court will grant only the relief necessary to correct the violations of the rights particular to the case. 18 U.S.C § 3626(a)(1)(A). "The court shall not grant or approve any prospective relief unless the court finds that such

1  relief is narrowly drawn, extends no further than necessary to correct the violation of the
2  Federal right, and is the least intrusive means necessary to correct the violation of the
3  Federal right." Id.  Plaintiff's desired prospective relief extends well beyond the scope of
4  this litigation.

5        **C.    Linkage**

6        Under § 1983, Plaintiff must demonstrate that each named defendant personally
7  participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77
8  (2009). In other words, there must be an actual connection or link between the actions
9  of the Defendants and the deprivation alleged to have been suffered by Plaintiff.  See
10 Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).  Supervisors may only be
11 held liable if they "participated in or directed the violations, or knew of the violations and
12 failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726
13 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be
14 held liable under § 1983 . . . 'if he or she was personally involved in the constitutional
15 deprivation or a sufficient causal connection exists between the supervisor's unlawful
16 conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410,
17 418 (9th Cir. 2003). Plaintiff also may not attribute liability to a group of defendants, but
18 must "set forth specific facts as to each individual defendant's" deprivation of his rights.
19 Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

20       **D.    Allegations Against Non-Party**

21       Rule 10(a) of the Federal Rules of Civil Procedure requires that each defendant
22 be named in the caption of the complaint. If Plaintiff intends to state a claim against
23 Correctional Counselor Lane or any other individual not specifically listed as a
24 Defendant, Plaintiff must name that person in the caption.

25       **E.    Eighth Amendment Claims**

26       To allege an Eighth Amendment claim for inhumane conditions of confinement, a
27 prisoner must show that prison officials were deliberately indifferent to a substantial risk
28 of harm to his health or safety.  See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994);

1   Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010). "Deliberate indifference

2   describes a state of mind more blameworthy than negligence" but is satisfied by

3   something "less than acts or omissions for the very purpose of causing harm or with

4   knowledge that harm will result."   Farmer, 511 U.S. at 835.  Plaintiff must demonstrate

5   first that the seriousness of the risk was obvious or provide other circumstantial

6   evidence that Defendants were aware of the substantial risk to his health, and second

7   that there was no reasonable justification for exposing him to that risk. Lemire, 726 F.3d

8   at 1078 (citing Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)) (quotation

9   marks omitted).

10              **a.    Failure to Protect**

11          Prison officials have a duty to take reasonable steps to protect inmates from

12   physical abuse at the hands of other inmates. Farmer, 511 U.S. at 833. To establish a

13   violation of this duty, the prisoner must establish that prison officials were "deliberately

14   indifferent" to serious threats to the inmate's safety.  Id. at 834.  To demonstrate that a

15   prison official was deliberately indifferent to a serious threat to the inmate's safety, the

16   prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to

17   inmate . . . safety; the official must both be aware of facts from which the inference

18   could be drawn that a substantial risk of serious harm exists, and [the official] must also

19   draw the inference."  Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th

20   Cir. 1995).

21              **b.    Denial of Food**

22          In order to violate the Eighth Amendment, deprivations must be "unquestioned

23   and serious" and contrary to "the minimal civilized measure of life's necessities."

24   Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The withholding of food is not "a per se

25   objective violation of the Constitution; instead, a court must assess the amount and

26   duration of the deprivation." Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999); Talib v.

27   Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998) ("The deprivation of food constitutes cruel

28   and unusual punishment only if it denies a prisoner the 'minimal civilized measure of

1  life's necessities.'") (citations omitted). The denial of one or two meals is insufficient to

2  state a claim. See Talib, 138 F.3d at 214, n.3 (noting it was doubtful inmate "was denied

3  anything close to a minimal measure of life's necessities" when he was denied fifty

4  meals in five months).

5          c.     **Medical Care**

6          For Eighth Amendment claims arising out of medical care in prison, Plaintiff

7  "must show (1) a serious medical need by demonstrating that failure to treat [his]

8  condition could result in further significant injury or the unnecessary and wanton

9  infliction of pain," and (2) that "the defendant's response to the need was deliberately

10 indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v.

11 Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). )). Deliberate indifference is shown by

12 "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need,

13 and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439

14 F.3d at 1096). "[A]n inadvertent failure to provide adequate medical care" does not, by

15 itself, state a deliberate indifference claim for § 1983 purposes. McGuckin v. Smith, 974

16 F.2d 1050, 1060 (9th Cir. 1992) (internal quotation marks omitted), *overruled in part on*

17 *other grounds*, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997); see also

18 Estelle v. Gamble, 429 U.S. 97, 106 (1976).

19          d.     **Verbal Harassment and Intimidation**

20         Allegations of threats and harassment do not state a cognizable claim under 42

21 U.S.C. § 1983. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (assaultive

22 comments by prison guard not enough to implicate Eighth Amendment); Gaut v. Sunn,

23 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong);

24 see also 42 U.S.C. § 1997(e) (prisoners cannot bring civil suits in federal court for

25 mental or emotional injuries suffered while incarcerated unless they first show that they

26 suffered physical injury).

27

28

1          **F.      First Amendment Claims**

2                 **a.      Legal Mail and Access to the Courts**

3          Plaintiff has a constitutional right of access to the courts, see, e.g., Silva v. Di

4  Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011), and that right includes the right to send

5  and receive legal mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).

6          The right of access to the courts is limited to bringing complaints to federal court

7  in direct criminal appeals, habeas petitions, and civil rights actions. Lewis v. Casey, 518

8  U.S. 343, 354 (1996). It is not a right to discover such claims or to litigate them

9  effectively once filed with a court. Id. at 354-55. A plaintiff must show that he suffered an

10 "actual injury," i.e., prejudice with respect to contemplated or existing litigation, such as

11 the inability to meet a filing deadline or present a non-frivolous claim. Id. at 348-49. An

12 "actual injury" is one that hinders the plaintiff's ability to pursue a legal claim. Id. at 351.

13         Where a prisoner asserts a backward-looking denial of access to the court claim

14 – one seeking a remedy for a lost opportunity to present a legal claim – he must show:

15 1) the loss of a "non-frivolous" or "arguable" underlying claim, 2) "the official acts

16 frustrating the litigation," and 3) "a remedy that may be awarded as recompense but

17 [that is] not otherwise available in some suit that may yet be brought." Christopher v.

18 Harbury, 536 U.S. 403, 415, 417 (2002) (noting that a backward-looking denial of

19 access complaint "should state the underlying claim in accordance with Federal Rule of

20 Civil Procedure 8(a), just as if it were being independently pursued.").

21         Interference with outgoing prisoner mail is justified if the following criteria are

22 met: (1) the regulation furthers "an important or substantial government interest

23 unrelated to the suppression of expression" and (2) "the limitation on First Amendment

24 freedoms must be no greater than is necessary or essential to the protection of the

25 particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413

26 (1974) (limited by Thornburgh v. Abbott, 490 U.S. 401, 413–14 (1989), only as test

27 relates to incoming mail). Prison officials cannot read legal mail, although they may

28 scan it and inspect it for contraband. Nordstrom v. Ryan, 762 F.3d 903, 906 (9th Cir.

1   2014).

2            **b.    Retaliation**

3        Section 1983 provides for a cause of action against prison officials who retaliate

4   against inmates for exercising their constitutionally protected rights. Pratt v. Rowland,

5   65 F.3d 802, 806 n. 4 (9th Cir. 1995) ("[R]etaliatory actions by prison officials are

6   cognizable under § 1983.") Within the prison context, a viable claim of retaliation entails

7   five basic elements: "(1) An assertion that a state actor took some adverse action

8   against an inmate (2) because of (3) that prisoner's protected conduct, and that such

9   action (4) chilled the inmate's exercise of his constitutional rights, and (5) the action did

10  not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d

11  559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d at 1114-15; Silva v. Di

12  Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Brodheim v. Cry, 584 F.3d at 1269.

13       The second element focuses on causation and motive.  See Brodheim v. Cry,

14  584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his protected conduct

15  was a "'substantial' or 'motivating' factor behind the defendant's conduct."  Id. (quoting

16  Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Although it can

17  be difficult to establish the motive or intent of the defendant, a plaintiff may rely on

18  circumstantial evidence. Bruce, 351 F.3d at 1289 (finding that a prisoner established a

19  triable issue of fact regarding prison officials' retaliatory motives by raising issues of

20  suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th

21  Cir. 1997); Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial

22  evidence of retaliatory intent").

23       In terms of the third prerequisite, filing a complaint, grievance, or civil rights

24  lawsuit is constitutionally protected. Cruzan by Cruzan v. Dir., Missouri Dept. of Health,

25  497 U.S. at 278.

26       With respect to the fourth prong, the correct inquiry is to determine whether an

27  official's acts "could chill a person of ordinary firmness from continuing to engage in the

28  protected activity[]." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir.

1  2006); see also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

2  With respect to the fifth prong, a prisoner must affirmatively allege that "'the

3  prison authorities' retaliatory action did not advance legitimate goals of the correctional

4  institution or was not tailored narrowly enough to achieve such goals." Rizzo v.

5  Dawson, 778 F.2d at 532.

6  **G.  Due Process Claims**

7  **a.  Processing of Grievances**

8  Plaintiff complains that several Defendants failed to address his complaints of

9  misconduct. It is not clear that Plaintiff filed any grievances for the misconduct

10  complained of in his complaint. In any case, the existence of an inmate appeals process

11  does not create a protected liberty interest upon which Plaintiff may base a claim that he

12  was denied a particular result or that the appeals process was deficient. Ramirez v.

13  Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.

14  1988).  Because there is no right to any particular grievance process, it is impossible for

15  due process to have been violated by ignoring or failing to properly process grievances.

16  **b.  Property**

17  The Due Process Clause of the Fourteenth Amendment protects prisoners from

18  being deprived of property without due process of law, Wolff v. Mc Donnell, 418 U.S.

19  539, 556 (1974), and prisoners have a protected interest in their personal property

20  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  Authorized, intentional deprivations

21  of property are actionable under the Due Process Clause, see Hudson v. Palmer, 468

22  U.S. 517, 532, n. 13 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), but

23  the Due Process Clause is violated only when the agency "prescribes and enforces

24  forfeitures of property without underlying statutory authority and competent procedural

25  protections," Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1019 (9th Cir.

26  2011) (citing Vance v. Barrett, 345 F.3d 1083, 1090 (9th Cir. 2003)) (internal quotations

27  omitted), cert. denied, 132 S.Ct. 1823 (2012).

28

1    **H.    Equal Protection**

2    The Equal Protection Clause of the Fourteenth Amendment requires that persons

3    who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center,

4    Inc., 473 U.S. 432, 439 (1985). To make an Equal Protection Claim, an inmate must

5    show either that Defendants intentionally discriminated against him on the basis of his

6    membership in a protected class such as race or sexual orientation, see Hartmann, 707

7    F.3d at 1123; Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005), or

8    that he received disparate treatment compared to other similarly situated inmates and

9    there was no rational basis for that difference in treatment. Village of Willowbrook v.

10   Olech, 528 U.S. 562, 564 (2000).

11   **I.    Conspiracy**

12   Plaintiff attributes many of the alleged violations to collusion between prison

13   officials, thus he may intend to state a conspiracy claim. A conspiracy claim brought

14   under Section 1983 requires proof of "'an agreement or meeting of the minds to violate

15   constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United

16   Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989)

17   (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450

18   F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866

19   F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need

20   not know the exact details of the plan, but each participant must at least share the

21   common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel

22   Workers, 865 F.2d at 1541).

23   The federal system is one of notice pleading, and the Court may not apply a

24   heightened pleading standard to Plaintiff's allegations of conspiracy. Empress LLC v.

25   City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v.

26   County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as

27   true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the

28   speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).  A plaintiff must set

1   forth "the grounds of his entitlement to relief[,]" which "requires more than labels and

2   conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id.

3   (internal quotations and citations omitted).  As such, a bare allegation that Defendants

4   conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a

5   conspiracy claim under section 1983.

6   **V.   Motion to Submit Evidence**

7         At the pleading stage, the Court must accept Plaintiff's allegations as true.

8   Plaintiff is not required to submit evidence in support of his contentions. Indeed, parties

9   may not file evidence with the Court until the course of litigation brings the evidence into

10  question (for example, on a motion for summary judgment, at trial, or when requested

11  by the Court). Presently, Plaintiff's complaint is pending screening, no motions for

12  summary judgment are before the Court, and no trial date has been set. In this

13  circumstance, the Court cannot and will not serve as a repository for Plaintiff's evidence

14  (e.g., prison or medical records, affidavits, declarations, etc.). Plaintiff's "Motion to

15  Submit Evidence" (ECF No. 9) will be denied.

16  **VI.   Conclusion and Order**

17        Plaintiff's complaint will be dismissed because it contains unrelated claims

18  against unrelated Defendants. Fed. R. Civ. P. 20(a)(2).  The Court will provide Plaintiff

19  with the opportunity to file an amended complaint. If Plaintiff amends, he may only

20  allege claims that (a) arise out of the same transaction, occurrence, or series of

21  transactions or occurrences, and (b) present questions of law or fact common to all

22  Defendants named therein. Fed. R. Civ. P. 20(a)(2). Plaintiff must file separate actions

23  for unrelated claims against unrelated Defendants.

24        If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but

25  under section 1983, it must state what each named defendant did that led to the

26  deprivation of Plaintiff's constitutional rights and liability may not be imposed on

27  supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-

28  77. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a

15

right to relief above the speculative level. . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's June 30, 2016 complaint (ECF No. 1) is DISMISSED with leave to amend;

2. Plaintiff's "Motion to Submit Evidence" (ECF No. 9) is DENIED;

3. The Clerk's Office shall send Plaintiff a blank complaint form along with a copy of the complaint filed June 30, 2016;

4. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. File a notice of voluntary dismissal; and

5. If Plaintiff fails to comply with this order, the Court will dismiss this action for failure to obey a court order and failure to prosecute.

IT IS SO ORDERED.

Dated:   December 7, 2016        /s/ _Michael J. Seng_

UNITED STATES MAGISTRATE JUDGE