UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS PATRICK,<br><br>    Plaintiff,<br><br>v.<br><br>PETROFF, et al.,<br><br>    Defendants. | **Case No. 1:16-cv-00945-AWI-MJS (PC)**<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>**(ECF No. 20)**<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's First Amended Complaint is before the Court for screening. (ECF No. 20.)

**I.    Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.    Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94

1

(1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

**III.     Plaintiff's Allegations**

At all times relevant to this action, Plaintiff was a state inmate housed at Wasco State Prison in Wasco, California. He names the following individuals as Defendants: Correctional Officers ("CO") Petroff, Ball, Picazo, Knight, Hurd, Priest, Reynaga, Showers, Look, Bracken, Moyes, Dominguez, Coca, Ziegler, Nieto, Martinez, Figueroa, Gonzalez (male), and Gonzalez (female); Drs. Ramos, Patel, Lane, and Cowen; Nurse Castle; Law Librarians Meeks and Murrieta; and Appeals Coordinator Feliciano, as well as a mailroom employee named "Niomi."

Plaintiff asserts numerous separate claims, which can be summarized essentially as follows:

In violation of Plaintiff's First Amendment rights, (1) Law Librarian Murrieta signed and sealed envelopes address to the ACLU, several law firms, the FBI, and Appeals Coordinator Feliciano, for which Plaintiff apparently never received a response; (2) CO

2

Ziegler refused to seal and sign three envelopes addressed to civil lawyers; (3) mailroom employee Niomi failed to document that Plaintiff received correspondence from the law firm of O'Melveny & Myers; (4) COs Petroff and Rios failed to document envelopes that were signed; (5) Petroff purposely misplaced mail containing Plaintiff's trust account statement; (6) Appeals Coordinator Feliciano and/or CO Ziegler and/or Niomi were responsible for sending and receiving Plaintiff's mail, but seemingly failed to fulfill this duty; (7) Murrieta refused to send mail to civil law firms because they were not addressed to the Court; (8) CO Look did not like Plaintiff outsmarting him; and (9) Law Librarian Meeks sealed and signed envelopes addressed to the ACLU and the FBI.

In violation of Plaintiff's Fourteenth Amendment rights, (1) Meeks failed to call Plaintiff down to the library as a Priority Library User ("PLU"), and Plaintiff believes Meeks and Ziegler are both homosexual; (2) CO Hurd refused to give Plaintiff a CDCR Form 7362 so that Plaintiff could request mental health services; (3) when Plaintiff requested a CDCR Form 22, Hurd only gave Plaintiff the first page; (4) Plaintiff was repeatedly denied access to the library even though he had PLU status, and Plaintiff believes CO Ziegler is responsible; (5) when Plaintiff sought mental health services from Dr. Cowen, COs Ziegler, Reynaga, and Knight interrupted Plaintiff's sessions and intimidated Dr. Cowen; (6) Dr. Patel conducted Plaintiff's medical exam in the medical trailer instead of the medical clinic, for which Plaintiff believes Ziegler is responsible; (7) Ziegler told kitchen staff to give Plaintiff smaller portions at dinner because of Plaintiff's race and single cell status; (8) because CO Hurd is, as Plaintiff believes, gay, he treats Plaintiff unfairly; (9) CO Nieto led Plaintiff to believe that Plaintiff had $437.50 in his trust account, however Plaintiff was told he had insufficient funds in his account when he attempted to purchase something; (10) COs Nieto, Hurd, Reynaga, Ziegler, and Hernandez "played" with Plaintiff regarding his available funds; (11) CO Ziegler, Dr. Cowen, and Counselor Lane failed to interview Plaintiff for programming, purposely hindering Plaintiff from being transferred to a program; (12) CO Priest made Plaintiff take a urine test even though Plaintiff has no history of drug or alcohol use while at Wasco

State Prison; (13) as Plaintiff was unable to urinate, CO Showers threatened to issue an RVR if Plaintiff did not urinate within three hours, and within three hours Plaintiff was found "guilty" and mandated to undergo urine tests once a month for a year; (14) Reynaga arranged for Plaintiff to be subjected to random urine tests in retaliation for Plaintiff's civil rights suit; and (15) at Plaintiff's hearing for his fighting offense, Figueroa refused to listen to Plaintiff's request for more time to address his mail issues.

In violation of Plaintiff's Eighth Amendment rights, (1) COs Martinez and Gonzalez (male) allowed Plaintiff to get into a fight with another inmate because they enjoyed watching it; (2) Martinez failed to give Plaintiff his lunch after Plaintiff returned from receiving medical treatment; (3) Dr. Ramos stapled a gash in Plaintiff's head without giving Plaintiff any warning while CO Moyes watched; (3) Plaintiff was left with the staple in his head for nearly three months; and (4) COs Hurd and Bracken pulled Plaintiff aside so that Nurse Castle could remove the staple using needle-nosed pliers after Plaintiff's medical request forms were rejected.

Plaintiff seeks punitive and compensatory damages.

**IV.    Analysis**

This action was initiated on June 30, 2016. On December 8, 2016, this Court screened the complaint and dismissed it with leave to amend. (ECF No. 10.) That dismissal order was based on Plaintiff's assertion of multiple unrelated claims against unrelated defendants and his cursory and conclusory allegations. Plaintiff was specifically informed that he could not assert unrelated claims against unrelated parties in a single action unless they arose out of the same transaction or occurrence and contained common questions of law or fact. Plaintiff was then directed to choose which claims he wished to pursue and was forewarned that his continued assertion of unrelated claims against unrelated defendants could result in the dismissal of this action for failure to comply with a court order.

Despite this warning, Plaintiff has again brought a number of unrelated claims (indeed, claims nearly identical to those appearing in his first complaint) against

1 unrelated parties, subjecting his pleading once again to dismissal pursuant to Federal Rules of Civil Procedure 20. See also George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)). He also presents wholly conclusory allegations and fails to meet any of the pleading standards he was previously told applied to the claims he seemed to want to assert. There are insufficient facts to support any of the claims Plaintiff asserts.

The Court must now determine whether to allow Plaintiff leave to further amend. Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When determining whether to grant leave to amend, Courts weigh certain factors: "undue delay, bad faith or dilatory motive on the part of [the party who wishes to amend a pleading], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment [.]" See Foman v. Davis, 371 U.S. 178, 182 (1962). Although prejudice to the opposing party "carries the greatest weight[,]...a strong showing of any of the remaining Foman factors" can justify the denial of leave to amend. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). Furthermore, analysis of these factors can overlap. For instance, a party's "repeated failure to cure deficiencies" constitutes "a strong indication that the [party] has no additional facts to plead" and "that any attempt to amend would be futile[.]" See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 988, 1007 (9th Cir. 2009) (internal quotation marks omitted) (upholding dismissal of complaint with prejudice when there were "three iterations of [the] allegations — none of which, according to [the district] court, was sufficient to survive a motion to dismiss"); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims), amended by 234 F.3d 428,

overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007); Plumeau v. Sch. Dist. # 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

In this case, despite the warning not to pursue multiple claims in the same action, the explicit directive to assert which claims he elects to pursue in this action, and despite being advised of the necessary elements and pleading standards, Plaintiff has failed to cure his past deficiencies. It is more than reasonable to conclude therefrom that he is unable or unwilling to cure them. Accordingly, further amendment would be futile. Accordingly, the undersigned will recommend that leave to amend be denied.

**V. Conclusion**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's First Amended Complaint be dismissed without leave to amend.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: April 30, 2017 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE